Good morning. May it please the court, Samuel Kornhauser for the accountable. Here with me is Brian David. Your Honor, we believe that this case cries out for the application of the If I Trust section 1 of the Sherman Act. I know there's been a 95-year history of the incorrect application of the antitrust laws to the, quote, business of baseball. And I think it's clear from all the courts that have decided or looked at this issue and that none of the justices since Oliver Wendell Williams back in 1922 believes that the antitrust laws did not apply to the business of baseball. All the courts have felt constrained to follow what the justices themselves said was an incorrect, improper application of the law back in federal baseball. And here we are 95 years later. Star Decisis does not apply in this case. This court can if it believes that the Supreme Court, if it was given an opportunity to look at this case anew, if this court believes that the Supreme Court would change its decision. So I'm going to ask, do you think that we could conclude that? The Supreme Court has given no indication that it's changing its mind. Well, Your Honor, respectfully, you had three justices dissenting in the flood decision that said it was wrong. Justice Douglas, who voted in favor of the exemption in the Tolson case 20 years later, said he was wrong. It was a mistake, and he regretted it. You've got a Justice Marshall, and you've got Justice Burton in the Tolson case that has dissented, said, look, there's no basis for this if there's an exemption. And we believe that Justice Burton was right. If there was an exemption in the Sherman Act or the antitrust laws for the business of baseball, it would have been carved out. There are exemptions for insurance, for labor contracts. Those are explicitly exempt in the law, in the antitrust law. There's no exemption for that. And it was predicated, and those arguments were made essentially in the San Jose case not so long ago in our court. Well, respectfully, Your Honor, I'm sorry to say since this is limited, you've got to answer basically the same actual situation, the same issue. In San Jose, the issue was whether the prohibition against moving franchises was a violation of the antitrust law. And they distanced themselves in that case. The accountants and the plaintiffs in that case, the city of San Jose, distanced themselves from the reserve clauses. And we're not arguing that that issue was never really before this court in the city of San Jose. Are you telling me that because it was such a misled case? Well, Your Honor, that's what we're trying to argue. Well, so you're arguing my point loud. You're saying the flood was incorrectly decided, and that we ought to essentially go against the Supreme Court and pick our own law. Well, I think the flood absolutely was incorrectly decided, and so was Tulsa, and so was federal baseball. And I'm trying to figure out what strategy is that you contemplate Let's see if I can explain that. I did my briefs. The strategy is that if there's changed circumstances, and if this court believes that the Supreme Court, given another opportunity, would change its decision, that you are entitled to not follow that case. You're not bound by stare decisis, circumstances that materially changed it. The world is a lot different than it was in 1922 or 53, or even in 1973 with the flood. I mean, you've got 30 billionaires that are making their franchises worth billions of dollars now. There's no need for the antitrust laws to not be applied to protect the billionaires. I mean, you're talking about tens of thousands of minor league ball players who are living on $3,000 a year. There's no, the antitrust laws were signed exactly for this, to protect competition, not to protect the competitors. The Supreme Court said that in the Ravitch case, and all we're saying is apply the law. There is no reason to do that. I don't know what you're talking about. I'm not sure. How would this right tell me, just to kind of help me here, because, I mean, Bootsie's reserve laws for minor league players is not covered by this exemption because? Because there's no, there's nothing in the antitrust laws, Section 1 of the Sherman Act, there's no carve out, there's no exemption for major league, for the business of baseball. That's a totally created out of whole cloth. I mean, and this was a court's decision. Otherwise, this was not to be recognized any longer. Well, I think, no, I think that you should recognize Ravitch and all the other cases that have failed in every other professional sport. Every professional athlete is covered by the antitrust laws. The owners of all those other sports are required, cannot collude or compete to restrain trade. Salaries are paid to all players. This was reported itself recently in the Legion, I hope I'm pronouncing it right, Legion, L-E-G-I-N, leather case. The court said, especially in antitrust cases, we are not bound by the strictures of stare decisis to just blindly follow precedent. If circumstances have changed, if it appears that our decision was wrong, given the events subsequent to that, if other decisions have come down to put our prior decision in question, then the court didn't deviate or not follow the prior decision. We believe all those factors are extended here. You've got, it's not 1922 where baseball was struggling. You've got these men, there's no reason, and there's no statute, there's no antitrust statute. I'll want to reserve a couple minutes to reply. Thank you. Good morning, Your Honors. John Kekker, and with me are Adam Orenson and John Gorman of our office, representing the commissioner of Michigan League Baseball and the three clubs. The district court correctly decided and called itself bound by the Steve San Jose case, which was recently decided, recently certain denied in the Supreme Court. It found that there was no reasonable dispute that the antitrust exemption that had been fashioned over the years covered the business of baseball. It made a point of saying that it's unlimited. Judge Kuczynski talked about that there's no limitation to relocation. And let's briefly cover this in our brief. And unless you have questions about that, I'm going to let it go. I do want to mention, I'm here, I'm going to just stop. I do want to mention the citations that counsel has put forward for avoiding some of the stereo-decisive. And the stereo-decisive is going to be from the afternoon, the two that were in the brief. Megan and the State Oil versus Con case stand exactly for the proposition that they are Supreme Court cases where the Supreme Court decided they were going to change the rules that the Supreme Court had made. State Oil versus Con was particularly interesting because Judge Posner went off one game on an all-black and then in the Seventh Circuit and said it's wobbly, it's raw, it's this. But he still said, I have to follow it. And Justice O'Connor and the Supreme Court said basically that's right and then they made the decision. So I don't know why those cases are being cited to avoid stereo-decisives. And then the same thing for the 28-J submissions made yesterday, Price versus Chicago, explain that a Supreme Court precedent is on point and it has to be followed. So unless the Court has questions. I have a couple of questions. So are minor leagues run for the purpose of profit or player development? They're from Major League Baseball's point of view. They're run for the purpose of training and player development for Major League Baseball players. For the minor league owners' point of view, I can't answer that question. They're the ones that have concessions, have to park and sell tickets. What defines a professional baseball player? The Curt Flood Act defines a Major League Professional Baseball player in its terms and the Major League Baseball contracts talk about players who were under contract with Major League teams. So for purposes of this brief, we've been talking about Major League Baseball players and Minor League Baseball players as people who meet the requirements of the uniform player contract that Major League Baseball has in its rules. So the minor leagues, you say, they're professional baseball players? The players in the minor leagues that we're talking about, there are other minor leagues, but they're the minor leagues that have contracts with Major League Baseball that are members of this alleged class, are players that are paid by Major League Baseball teams to play in the minor leagues, and they come up to the major leagues eventually. You're training them. And so the players on this show are not alleged. The player paid $1,100 for working in Sword Season A and $1,250 for their month for Class A, $1,500 a month for Class A, and $2,150 for Triple B. Is that true? We have to accept their allegations of the complaint and are litigating based on accepting their allegations of the complaint. We don't think it's true. We think there's other things to be talked about, but we're not trying to raise the factual issue with respect to their allegations. We're accepting their allegations in an argument that they don't establish a criminalizable case for the court. You must have a lot of these, and then just go to college. Anyway, I should get outside the record to talk more about that. We accept the allegations of the complaint in an argument that it does not state a case. If there are other questions, I'm happy to answer them. Thank you. Thank you. No decision by the Supreme Court, but many of the others dealt with minor league baseball players. Mr. Jason, first impression, whether the reserve clause applies or whether it's a violation of the antitrust laws. Judge Kuczynski in the city of San Jose left open the possibility they were talking about franchise relocation. They weren't talking about the reserve clause. They weren't talking about reserve clause application in minor league baseball. Judge Kuczynski said there might be activities in major league baseball as franchises engage in their only collateral public display of baseball games for which antitrust liability may, therefore, would damage UCLA position errors and things that didn't have to do with the game. Why isn't this one essentially part of those activities that he was describing in San Jose? Because I know this is a radical suggestion, but I don't think paying minor league baseball players $1,000 a month or $3,000 a year has any effect on the business of baseball. That's a lot of us. That's different than I think we cited in the Lauman case where you've got the court in New York, Southern District of New York, held that broadcasting baseball games was outside the business of baseball. And that has a bigger effect on the public display of baseball than minor league players playing in, you know, some podunk city, some place to be developed for major league baseball. And it would have absolutely no effect on the multibillion-dollar business where other minor league baseball players were paying a fair wage. There's no reason to protect that. And just with regard to scoring decisions, if I could, I'd like to just read a short quote from Justice Blackstone in the commentaries on the law. He said, regarding scoring decisions, we think this is really, and we'd ask the court to take this to heart, a judge is not delegated to pronounce a new law. It's maintained and expound the old one. Yet this rule admits an exception where the former determination is most evidently contrary to reason, much more if it be contrary to the defined law. But even in such cases, the subsequent judges do not pretend to make a new law, but to vindicate the old one for misrepresentation. For if it be found that the former decision is manifestly absurd or unjust, it is to declare not that such a sentence is bad law, but that it was not law. And respectfully, Your Honor, we think that's the deal. The federal baseball decision was wrong law. There was no antitrust exemption for the business of baseball. You can't find a single word saying baseball in the Sherman Act. Yet for 95 years, the courts have been following it as if it's law. It's not required. It's not required for scoring decisions. I'm sorry. What? Thank you, Your Honor. That's fine. Thank you. All right. Thank you, Your Honor. I was going to say, I don't know. We think that the case is certainly submitted for decision. Thank you.
judges: Fernandez, Thomas, Murguia